## 19899. CRONIC v. THE STATE.

DECIDED OCTOBER 8, 1929. REHEARING DENIED NOVEMBER 11, 1929.

*Shackelford, Shackelford & Davis,* for plaintiff in error.
*W. D. Martin, solicitor,* contra.

Per Curiam. Jim Cronic was convicted under an indictment charging him and three other persons with larceny from the house, of articles worth less than $50. He excepted to the overruling of his motion for a new trial, based upon the general grounds and nine special grounds.

█ It being peculiarly within the province of the jury to pass upon the credibility of witnesses, and there being evidence that the defendant participated in the alleged theft, this court can not hold that the trial judge erred in overruling the general grounds of the motion for a new trial. See companion case of *Allen* v. *State,* 39 *Ga. App.* 642 (148 S. E. 167).

█ The first special ground of the motion for a new trial is not unqualifiedly approved by the trial judge, and therefore can not be considered by this court. *Goolsby* v. *State,* 35 *Ga. App.* 167 (2 *a*) (132 S. E. 245); *Brazil* v. *LaGrange,* 37 *Ga. App.* 500 (3) (140 S. E. 782).

█ The other special grounds of the motion for a new trial disclose no error requiring a reversal.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur. Luke, J., dissents.*

Luke, J., dissenting. I am of the opinion that the judgment should be reversed solely because the trial judge inadvertently violated the law prohibiting him from expressing or intimating his opinion as to what has or has not been proved, as alleged in the first special ground of the motion for a new trial. It appears from this ground that after the plaintiff in error had sought to impeach Teke Morgan, and while the State was seeking to sustain the character of that witness by the testimony of J. W. Potter, the following occurred: "By Solicitor Martin: Q. Mr. Potter, do you know Teke Morgan? A. Yes, sir, I know of her. Q. Do you know her general reputation in the community in which she lives? A. Well, yes, sir, I know pretty well, I reckon. I have heard a whole lot. Q. Well, is that good or bad? A. Well, I aint heard nothing so bad and I aint heard nothing extra good. By Mr. Shackelford: Q. Will you swear her character is good? A. No, I could not swear it's good, nor I couldn't swear it's bad. I don't know. By the court: Q. Do you know her general character for truthfulness in the community in which she lives? A. No, sir, I don't know. By the court: Do you or not know her

general reputation for truth and veracity in the community in which she lives? A. I don't know anything against the lady. Q. By the court: Well, would you say her reputation is good or bad? A. Well, I say it is good, so far as I know. Ruling by the court: A witness might have had a bad character as to certain things, and a good character for truth and veracity; and I hold, if the witness states he has heard nothing against the witness in the community in which she lives, that of itself would imply good character. Q. You say you would believe her on oath? Yes, sir. I would if she was put up here on the stand. By Mr. Shackelford (cross): You say you have heard a whole lot about her? A. I have heard other folks say something. Q. What have you heard about her? A. Well, it is just like Mr. Gooch said about that Jess Doster case. Q. What do people say about her? A. It's been a right smart while back. Along at that time they thought she knowed something about it (the killing of Jess Doster), but I don't know anything about it. By the court: Do you know what they say about her reputation, whether it is good or bad for truthfulness? A. Well, some say it is bad, and some say it is good; so I don't know. By the court: Well, from what you know about her general reputation, her character for truthfulness, would you believe her in a court of justice under oath? A. Yes, sir, I would believe what she would say on the stand."

I think it is clear from the foregoing that the court inadvertently violated the Penal Code, § 1058. Teke Morgan testified that she was one of the party that went to the church from which the goods were alleged to have been stolen, and that the defendant brought the stolen articles from the church and put them in the automobile in which she was sitting. Titus Allen, her half-brother, testified that he saw the "stuff out of the church in her room," and that she said she had bought it from a woman in Macon. Furthermore, there was evidence directly contradicting the testimony of Teke Morgan as to material matters. In short, her testimony was most material; her character had been attacked from several different angles; and any words or conduct of the court tending to lead the jury to believe that he leaned to the belief that Teke Morgan was worthy of credit must have been highly injurious to the defendant's case. Therefore, in my opinion, the court committed reversible error in overruling the motion for new trial.